ROBERTS, J.,
dissenting:
¶ 18. The majority affirms the chancellor’s decision to enter a judgment in favor of Christine and Heywood DeJean and Hancock Bank based on the concept that the certificate of deposit at issue was redeemed before Julia Mae’s death. In my opinion, the majority applies an incorrect standard of review. Further, with due respect for the majority, I am of the opinion that the chancellor exhibited a fundamental misapplication of the law when she found that Julia Mae redeemed the certificate of deposit before she died. Because I *451 would reverse and render declaratory judgment for Patrick, I respectfully dissent.
¶ 19. Julia Mae DeJean and Patrick DeJean liquidated their deceased sister’s bank stock and placed the funds in a certificate of deposit held by Hancock Bank in Jackson County, Mississippi. They owned the CD jointly and each had rights of survivorship. On January 16, 2001, Julia Mae executed a power of attorney and named her sister-in-law, Christine DeJean, and Christine’s son, Heywood DeJean, as her attorneys in fact.
¶ 20. The facts are undisputed that on or about January 18, 2001, Julia Mae spoke with Peggy Walker, a customer service representative at Hancock Bank and ordered the old CD redeemed and the proceeds transferred into a new CD. However, during the redemption process, Julia Mae learned that, by delaying issuance of the new CD until January 23, 2001, the old CD would mature and earn additional interest. Further, if Julia Mae redeemed the CD prior to the interest accrual, the CD would lose an unspecified amount of interest. At Julia Mae, Christine, and Heywood’s request, Hancock Bank delayed the issuance of the new CD to maximize the interest accrual. However, Hancock Bank stamped the redemption date on the old CD as of January 19, 2001.
¶ 21. Julia Mae died on January 20, 2001. On January 23, 2001, Hancock Bank issued the new CD in the names of Julia Mae DeJean or Christine DeJean or Heywood DeJean. On February 5, 2001, Christine and Heywood presented the new CD to Hancock Bank. Hancock Bank redeemed the new CD and issued them a check for the balance.
¶ 22. Though the facts are undisputed, the majority states the standard of review as though this case is a simple factual dispute over whether Julia Mae properly redeemed the old CD when Hancock Bank postdated Julia Mae’s redemption. This is not a simple case involving a factual dispute. The relevant foundation question is whether the legal operation of redemption occurred before or after Julia Mae died. As such, the issue is not one of fact, it is an issue of whether the chancellor correctly applied the undisputed facts to a question of law. Because this issue involves a question of law — the exact timing of redemption — the appropriate standard of review is not the abuse of discretion standard. The appropriate standard of review, as with all questions of law, is a de novo review. Ladner v. Necaise, 771 So.2d 353(¶ 3) (Miss.2000).
¶ 23. First, it is appropriate to consider just who has the right to redeem the CD. The chancellor’s findings of fact and conclusions of law are not specific. At one point the chancellor found that Julia Mae redeemed the CD. At other points the chancellor found that Hancock Bank redeemed the CD. The majority uses passive voice to find that “the chancery court correctly found that the original CD was properly redeemed on January 18, 2001.” Accordingly, the majority opinion is unclear as to who may redeem the CD. In my opinion, as a matter of law, only Hancock Bank could redeem the CD.
¶ 24. No authoritative and on-point definition of “redemption” in the context of certificates of deposit appears in Mississippi jurisprudence. However, viewing the legal operation of redemption in other contexts, it is clear that only certain parties have rights of redemption. One such context is the Savings Associations Law. Pursuant to the Savings Association Law, only the association may redeem “all or any part of any of its savings accounts.” Miss. Code Ann. § 81-12-153 (Rev.2001). The term “association” refers to “a savings association or savings and loan association *452 subject to the provisions of this chapter.” Miss.Code Ann. § 81-12-3(a) (Rev.2001).
¶25. According to the Uniform Commercial Code, “[a] debtor, any secondary obligor, or any other secured party or lienholder may redeem collateral.” Miss. Code Ann. § 75-9-623 (Rev.2002). Section 75-9-623(b) goes on to state that, “To redeem collateral, a person shall tender: (1) Fulfillment of all obligations secured by the collateral then due or past due (excluding any sums that would not be due except for an acceleration provision); and (2) The reasonable expenses and attorney’s fees described in Section 75 — 9—615(a)(1).”
¶26. A fair uniform definition of redemption would be the “[repurchase of notes ... by paying their value to their holders.” Black’s Law Dictionary 1278 (6th ed.1991). A certificate of deposit is “an instrument containing an acknowledgment by a bank that a sum of money has been received by the bank and a promise by the bank to repay the sum of money.” Miss.Code Ann. § 75 — 3—104(j) (Rev.2002). Section 75 — 3—104(j) goes on to state that “[a] certificate of deposit is a note of the bank.” (emphasis added). Applying the previously mentioned uniform definition, redemption, in the context of a CD, occurs when a bank pays the value of the note— the CD — to the depositor.
¶ 27. As such, Julia Mae had absolutely no legal authority to redeem the CD. As a matter of law, only Hancock Bank could effectuate redemption. Language within the terms of the CD supports this interpretation. According to the endorsed terms of the CD, “This certificate shall be renewed automatically ... unless presented for redemption within ten (10) days after the expiration (maturity) date of the original or any renewal term.... ” Pursuant to this language, Julia Mae or her representative could only present the CD for redemption. That is, Julia Mae could not redeem the CD, and neither could her representative.
¶ 28. Having established just who could redeem the CD, it is now relevant to consider when redemption occurred. As stated previously, in the context of a CD, redemption occurs when a bank pays the value of the CD to the depositor. There is no dispute that, despite Hancock Bank’s postdating of the CD, Hancock Bank actually paid the value of the CD to Christine and Heywood on January 23, 2001. As such, by operation of law, redemption occurred on January 23, 2001-after Julia Mae died. Accordingly, the chancellor’s finding that Julia Mae redeemed the CD on January 19, 2001, is a manifestly incorrect conclusion of law for two reasons: (1) as a matter of law, only Hancock Bank, rather than Julia Mae could redeem the CD, and (2) redemption occurred on the date that the bank paid the value of the CD. By operation of law, redemption occurred on January 23, 2001.
¶ 29. Even if I am erroneous in my analysis that redemption occurred on Tuesday, January 23rd, then the majority’s implied conclusion that redemption was complete on the prior Thursday still does not justify an affirmance of the chancellor. It is undisputed that Hancock Bank paid the old CD by the issuance of the new CD to Julia Mae, Christine and Heywood on Tuesday, January 23rd. It is further undisputed that Julia May died on January 20th. If, as implied by the majority opinion, redemption was complete on Thursday the 18th, then upon Julia Mae’s death on Saturday, the proceeds of the old CD became an asset of Julia Mae’s estate. Consequently, on the following Tuesday, Hancock Bank was only authorized to pay the proceeds to Julia Mae’s estate or to Patrick, the joint owner. This, Hancock Bank did not do. Instead, it issued a new joint CD to Julia Mae, Christine and Heywood. *453 Such an act is in violation of the nuncupa-tive will statute, which prohibits honoring the oral request of a decedent regarding the transfer or disposition of his or her property after death. Miss.Code Ann. § 91-5-15 (Rev.2004).
¶ 30. Because Julia Mae died on January 20, 2001, neither Christine nor Heywood had the legal authority under their power’s of attorney to present the CD for redemption or to collect the value of the CD. Similarly, Hancock Bank did not have the legal authority to redeem the value of the CD to Christine or Heywood. The CD was listed as a joint account with rights of survivorship. When Julia Mae died, Patrick became the sole owner of the account, and all rights to the value of the CD vested in Patrick. Accordingly, the remainder of the issues on appeal become moot. In my opinion, the majority improperly affirms the chancellor’s incorrect conclusion of law under an improper standard of review. Because I would render a declaratory judgment for Patrick, I must respectfully dissent.
IRVING, GRIFFIS AND BARNES, JJ., JOIN THIS OPINION.